IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ALLAN L. HENON, | ) | |
| | ) | |
| Plaintiff, | ) | CV 05-738-PK |
| | ) | |
| v. | ) | **FINDINGS AND** |
| | ) | **RECOMMENDATION** |
| JO ANNE B. BARNHART, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**PAPAK, Magistrate Judge**:

Plaintiff Allan Henon seeks judicial review of the decision by the Social Security Administration ("SSA") denying his claim for disability benefits under Title II of the Social Security Act. The government moves to dismiss, asserting that this court lacks subject matter jurisdiction. The motion to dismiss should be granted in part and denied in part, and the matter remanded to the agency for further proceedings.

## Background

Plaintiff was a self-employed truck mechanic in Prineville, Oregon, for many years. Before that, he worked as a long-haul truck driver. His medical history includes severe back pain of longstanding duration, for which surgery was recommended in 1992

1 - FINDINGS AND RECOMMENDATION

but never performed; a fractured skull; surgery for carpal tunnel syndrome in both wrists; Type II diabetes; hypertension; and strong indications of sleep apnea.

By early 1995, Plaintiff was experiencing loss of balance, clumsiness, and episodes of numbness and pain, especially in his right leg. He had double vision for two months in late 1994. Tests revealed multiple sclerosis, in addition to his other pre-existing problems. It soon became apparent that Plaintiff had the "progressive relapsing" form of the disease. In all probability, his symptoms would gradually worsen. There would be periods of exacerbation punctuated by occasional short-term improvements, but the long-term prognosis was poor.

The disease, unfortunately, has followed that course. The record reflects a progressive decline, from a robust man to one who had difficulty walking without falling, and later could walk only with two canes. Eventually, Plaintiff was confined to a wheelchair, unable to get up when he fell on the floor. Various medications were employed, with mixed results. Initially, Plaintiff responded well, at least for short periods of time, but the remissions did not last long and the drugs had serious side effects. The medications also exacerbated his diabetes and hypertension. Ultimately, doctors could do little to arrest the progress of the disease. Plaintiff also reports that he is in constant pain; his pharmacy records show numerous prescriptions for painkillers. Finally, his doctors noted increasing depression as the disease exacted its toll.

Were the question before this court whether Plaintiff presently is disabled, it would be an easy case. It is undisputed that Plaintiff cannot perform his past relevant work. He is now 56 years old, has only a high school education (plus one year of college) and --it appears from the record-- few transferable skills. That would mandate a finding of disability. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00.

Two complications intrude, though, one temporal and the other procedural. The first complication is that the SSA has determined that Plaintiff's eligibility for Disability Insurance Benefits expired on December 31, 1997. Consequently, he may not receive disability benefits unless he was disabled as of that date. That Plaintiff subsequently became disabled is insufficient.

The second complication is that, for most of this period, Plaintiff was pro se. From reviewing his submissions, it is apparent that he did not understand the legal requirements to qualify for disability benefits, or how to properly present his case. He did not even obtain a letter from his treating physician. It also appears doubtful that he understood some questions on the forms he completed, judging by the responses he gave to those questions.

Plaintiff first applied for benefits on September 22, 1995. The claim was denied at the first level of review. Plaintiff did not appeal. He applied again on December 14, 1998. On July 1, 1999, that claim was denied at the first level of review. Again,

3 - FINDINGS AND RECOMMENDATION

Plaintiff did not appeal the determination. To this day, Plaintiff has never had a hearing during which he and his witnesses could offer testimony, questions could be posed to the vocational expert and doctors, and the record fully developed.

On November 3, 2000, Plaintiff filed a third application for benefits. That claim was denied on the basis of res judicata. Again, Plaintiff does not appear to have understood the procedures, or what showing he was required to make or how to accomplish it. He did belatedly request a hearing and opportunity to testify, which request was denied. The adverse decision was affirmed by an Administrative Law Judge ("ALJ") on January 11, 2002, and by the Appeals Council on April 12, 2002.

Plaintiff finally obtained an attorney,[1] and appealed that determination to the District Court. <u>Henon v. Barnhart</u>, Civil No. 02-740-AA (D. Oregon). It was a futile exercise, though, as Plaintiff had not made a proper record below. On March 11, 2003, Judge Aiken granted the government's motion to dismiss for lack of jurisdiction.

On April 9, 2003, with the aid of his new attorney, Plaintiff moved to reopen the 1998 disability claim. 20 C.F.R. § 404.988 provides, in relevant part, that the SSA will reopen a prior decision if, within four years of the date of the notice of

---

[1] On May 9, 2001, Plaintiff designated attorney Sue-Del McCulloch as his representative, but social security cases do not appear to be her specialty. The docket sheet lists her as attorney-of-record in 29 cases. None are social security cases. In 2002, a law firm with experience litigating social security cases was substituted.

the initial determination, "we find good cause, as defined in
§ 404.989, to reopen the case . . . ." 20 C.F.R. § 404.988(a)
states, "We will find that there is good cause to reopen a
determination or decision if -- (1) New and material evidence is
furnished . . . ."

The SSA denied the motion to reopen on the grounds that (1)
the evidence offered by Plaintiff was neither material nor new,
and (2) although the motion to reopen was timely filed, some of
the evidence tendered in support of the motion was not furnished
to the agency within the four year window and could not be
considered.

Plaintiff appeals from that decision. Defendant moves to
dismiss for lack of jurisdiction.

## **Legal Standards**

The Social Security Act authorizes this court to review any
"final decision of the Commissioner of Social Security made after
a hearing." 42 U.S.C. § 405(g). This language has generally
been construed as depriving the federal courts of jurisdiction to
hear appeals from determinations by the Commissioner that a
matter is res judicata, or to hear appeals from the agency's
refusal to reopen a prior decision.

There are limited exceptions to that rule. A district court
has jurisdiction when a colorable constitutional claim is
alleged, Califano v. Sanders, 430 U.S. 99, 109 (1977), or if the
Commissioner "improperly invoked the res judicata doctrine,"
Thompson v. Schweiker, 665 F.2d 936, 941 (9th Cir. 1982), or if

"the record is patently inadequate to support the findings the ALJ made . . . [which] is tantamount to a denial of due process." Id. See also Krumpelman v. Heckler, 767 F.2d 586, 588 (9th Cir. 1985). The Commissioner's failure to evaluate the evidence before declining to reopen the prior application, or if that evaluation was patently inadequate, may amount to a denial of due process. Spears v. Sullivan, 1992 WL 195322, at *2-3 (N.D. Calif. 1992). Some Ninth Circuit decisions have also stated that res judicata should not be applied in administrative cases when it "would contravene an overriding public policy or result in manifest injustice." Martin v. Donovan, 731 F.2d 1415, 1416 (9th Cir. 1984), quoting Thompson, 665 F.2d at 940.

Finally, the court has jurisdiction to correct errors of law. See Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001) (discretionary decision reviewable to the extent it rests on an explicit mistake of law or other egregious error, notwithstanding the exercise of discretion is itself unreviewable); Eads v. Secretary of HHS, 983 F.2d 815, 817 (7th Cir. 1993); Gonzales v. Secretary of HHS, 1988 WL 236456 (D. N.M. 1988).

Conversely, the court may not intercede simply because it might have decided the matter differently, even if the Commissioner abused her discretion. "Once a decision becomes administratively final, the Secretary's decision to reopen a claim is purely discretionary." Davis v. Schweiker, 665 F.2d 934, 935 (9th Cir. 1982). Accordingly, so long as the Commissioner has made a thorough inquiry and exercised her

discretion, that determination is not subject to judicial review except as noted above.

## Discussion

The Complaint seeks a declaration that Plaintiff is entitled to Social Security benefits. This court lacks jurisdiction to grant that relief. The decision denying Plaintiff's claim on the merits was made in 1999. An appeal now is untimely. See 42 U.S.C. § 405(g) (allowing only 60 days to bring an action). Moreover, because Plaintiff did not exhaust his administrative remedies by appealing that decision, the 1999 determination is not a "final decision of the Commissioner of Social Security made after a hearing." Id. To that extent, Defendant's motion to dismiss should be granted.

That does not mean the entire case must be dismissed outright, as Defendant requests. I construe the Complaint, as did Defendant, as also encompassing an appeal from the Commissioner's refusal to reopen the 1998 claim for benefits. Defendant does not dispute that this appeal was filed within the allotted sixty days. Consequently, the court has jurisdiction to review that decision provided Plaintiff has a colorable argument that falls within the narrow bounds set forth in the preceding section.

Defendant agrees that Plaintiff's motion to reopen the case was timely filed within four years following the July 1, 1999 notice of initial determination. Defendant also concedes that the Appeals Council erred, as a matter of law, in holding that

7 - FINDINGS AND RECOMMENDATION

evidence supporting that motion could not be considered because the agency did not receive those documents until the fourth anniversary had passed. Defendant now acknowledges that so long as the motion to reopen was timely filed, it is not necessary that all evidence be received within the four year window as well. That is a sensible interpretation. The claimant may have little control over the timing of the evidence presentation, which can depend on when the agency schedules a hearing to elicit testimony or when documents are received from third parties.

The alternative basis for the agency's decision was that Plaintiff did not tender any new material evidence, hence the agency had no discretion to reopen the claim. The ALJ belittled the May 21, 2004 letter from Dr. Knower as "essentially a summary of chart notes that have been part of the medical record for years" and "a legal brief signed by a doctor." That characterization was manifestly incorrect.

A letter from a treating physician, stating that the claimant was disabled as of the relevant date and the reasons for that conclusion, is among the most probative evidence a claimant can offer. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996). Plaintiff had not previously submitted a letter from his treating physician, nor had there been a hearing at which the record was fully developed. Thus, the letter from Dr. Knower was both (1) new evidence and (2) material evidence.

It is difficult to understand how the ALJ could have concluded otherwise. However, the ALJ's characterization of Dr.

Knower's letter as a "legal brief signed by a doctor" and "a legal argument supporting disability" strongly suggests the ALJ was laboring under the misconception that a treating physician may not properly offer an opinion that the claimant is disabled, or that the claimant's condition meets the criteria for one or more Listed Impairments.

That assumption is incorrect, as a matter of law. While the ultimate decision whether to award benefits is made by the Commissioner, a treating physician may certainly offer an expert opinion that the claimant meets the applicable criteria, and may explain the basis for that opinion. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).[2]

That legal error was prejudicial, as it induced the ALJ to ignore material new evidence. Whether Plaintiff, on a particular date, suffered from "multiple sclerosis" with "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station," *i.e.,* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.09(A), is a question that Dr. Knower is qualified to address, both by virtue of his training and his having repeatedly observed and examined Plaintiff during the

---

[2] Social Security Ruling 96-5P, 1996 WL 374183 (July 2, 1996) is not to the contrary. While the "final responsibility for deciding" certain "dispositive" issues is "reserved to the Commissioner . . . adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner" and such medical opinions "must never be ignored." Id. Notably, Holohan and Reddick were both decided well after SSR 96-5P was promulgated.

relevant time period. The same is true as to the other Listings discussed in Dr. Knower's letter. Dr. Knower was also qualified to offer an opinion that Plaintiff was incapable of regularly working a 40-hour week during the relevant time period, an issue that goes to the heart of the disability determination.

The ALJ's further description of Dr. Knower's letter as "essentially a summary of chart notes that have been part of the medical record for years" is equally puzzling. Dr. Knower does discuss his chart notes in the letter. However, the point he is making is that the Commissioner has misinterpreted his chart notes (or else the chart notes did not adequately convey all of the relevant facts known to Dr. Knower) and the Commissioner relied upon that misinterpretation in denying benefits. See, e.g., AR 108 (Commissioner assumed Plaintiff could regularly work nine hour days); AR 105 (Commissioner assumed Plaintiff could lift fifty pounds, be on his feet for at least six hours in an eight-hour day, and climb ramps, ladders, ropes and scaffolds).

Dr. Knower therefore sought to clarify what he actually meant by those chart notes, and to correct any misapprehension. Far from being a mere summary of the existing record, Dr. Knower's letter contradicts the Commissioner's previous interpretation of the evidence and the findings the agency had made to justify the denial of benefits. Again, this would appear to be new material evidence. In dismissing Dr. Knower's letter as a mere summary of chart notes already in the record, the ALJ must either have not fully comprehended the existing record and

how those notes had previously been construed, or not understood what new evidence was being offered and why.  Such errors are understandable, given the sheer number of claims that the agency must process every year, but that is little comfort to Plaintiff.

In summary, the Commissioner's decisionmaking process was fatally tainted by several erroneous assumptions that led the agency to mistakenly assume that certain evidence could not properly be considered, or was not new, and thus the agency had no discretion to reopen the case because Plaintiff had not met the threshold requirement of producing new material evidence.

In criminal cases, a sentencing court's discretionary decision not to depart downwards was unreviewable.[3]  United States v. Berger, 103 F.3d 67, 69 (9th Cir. 1996); United States v. Brown, 985 F.2d 478, 480-83 (9th Cir. 1993).  Nevertheless, if the sentencing court erroneously believed that it lacked the authority to depart in a particular instance, the Court of Appeals could exercise jurisdiction and remand so the sentencing court could properly exercise its discretion, unhindered by the error.  Id.  Of course, the ultimate decision whether to exercise the authority to depart downward remained with the sentencing court and was not reviewable.

The situation here is analogous.  The Commissioner's mistaken assumptions led the agency to assume that it lacked authority to reopen the 1998 claim.  As a result, the agency was

---

[3] Or at least that was the rule prior to United States v. Booker, 543 U.S. 220 (2005), which made the Sentencing Guidelines advisory.

unable to exercise its discretion in the manner contemplated by the Social Security regulations. The matter should therefore be remanded to the Commissioner for reconsideration. The actual decision whether to reopen the claim is committed to the discretion of the Commissioner, though the regulations do furnish her with some guidance. See 20 C.F.R. § 404.988(a) ("We will find that there is good cause to reopen a determination or decision if--(1) New and material evidence is furnished . . .").

## Recommendation

Defendant's motion (docket # 4) to dismiss for lack of jurisdiction should be granted in part and denied in part. The court lacks jurisdiction to review the Commissioner's decision denying Plaintiff's claim for benefits on the merits, or to review the merits of a discretionary decision not to reopen a claim. However, the court has jurisdiction to address errors of law and constitutional violations.

As such errors were present here, and appear to have tainted the decisionmaking process, the matter should be remanded to the Commissioner so she may reconsider Plaintiff's request to reopen his 1998 claim.

## Scheduling Order

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due by January 27, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 13th day of January, 2006.

/s/ Paul Papak
_____
Paul J. Papak
United States Magistrate Judge